IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Crystal Faulkner individually and as Guardian for K.F., and John Faulkner individually as Guardian for K.F., <br><br> Plaintiffs, <br> v. <br><br> York County School District[1] and Michael Abraham, <br><br> Defendants. | Civil Action No.: 0:21-cv-02090-JMC <br><br><br> **ORDER AND OPINION** |

Plaintiffs Crystal Faulkner, individually and as Guardian for K.F., and John Faulkner, individually and as Guardian for K.F., (collectively "Plaintiffs") filed the instant action seeking monetary damages from Defendants York School District 1 (the "District") and Michael Abraham (together "Defendants") for severe injuries suffered by K.F while attending York Middle School. (ECF No. 1-1.) Plaintiffs assert claims alleging violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213; the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–796; the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1482; for deprivation of civil rights pursuant to 42 U.S.C. § 1983; and state law claims for negligence, gross negligence, recklessness, outrage/infliction of emotional distress ("IED"), and violation of the South Carolina Bill of Rights for Handicapped Persons ("SCBORFHP"), S.C. Code Ann. §§ 43-33-510 to -580 (West 2022). (ECF No. 1-1 at 6 ¶ 21–12 ¶ 53.)

This matter is before the court on Defendants' Motion to Dismiss pursuant to Rules

---

[1] Defendants assert that the District is incorrectly identified by Plaintiffs as York County School District. (ECF Nos. 1 at 1 n.1, 5-1 at 1 n.1.) The District further asserts that it should be identified as York School District 1. (*Id.*) Therefore, the court **ORDERS** the Clerk of Court to change the caption in the docket to reflect the District's proper name.

1

12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and their Motion to Strike pursuant to Rule 12(f). (ECF No. 5.) Plaintiffs assert specified opposition to Defendants' Motion to Dismiss and Motion to Strike. (*See* ECF No. 9.) For the reasons set forth below, the court **GRANTS** Defendants' Motion to Dismiss pursuant to Rule 12(b)(6), **DENIES** Defendants' Motion to Dismiss pursuant to Rule 12(b)(1), and **GRANTS** Defendants' Motion to Strike.

## I.  RELEVANT BACKGROUND TO PENDING MOTIONS

Plaintiffs allege that their minor child, K.F., has autism spectrum disorder, a disabling impairment that qualifies her for the statutory protections provided by the ADA, the Rehabilitation Act, the IDEA, and the SCBORFHP. (ECF No. 1-1 at 4 ¶ 11.) Plaintiffs further allege that one of the results of K.F.'s impairment is that she generally needs to be placed in special education classes at school. (*Id.*) However, Plaintiffs assert that upon reaching the sixth grade, "York Middle School placed K.F. back into regular classes." (*Id.*) As a direct result of K.F.'s placement in regular classes, Plaintiffs assert that K.F. was bullied by K.B., another student. (*Id.* at 5 ¶¶ 13, 14.) Plaintiffs allege the bullying started in 2017 and they continuously reported the conduct to Abraham, the Vice Principal of York Middle School, and other school administrators, who did nothing to address the situation. (*Id.* ¶¶ 15–17.) Finally, on April 8, 2019, Plaintiffs allege that K.B. physically assaulted and beat up K.F., recorded the assault, and posted it on social media. (*Id.* ¶ 18–6 ¶ 21.) As a result of the assault, "K.F. suffered [and continues to suffer] physical, mental, emotional, psychological [] injuries" requiring her to be "admitted for in-hospital treatment and committed to in-patient mental health facilities." (*Id.* ¶ 20.)

Believing their daughter had been "deprived of the benefits of education," Plaintiffs filed an action in the York County (South Carolina) Court of Common Pleas on January 27, 2020. (ECF No. 9 at 2.) "On April 17, 2020, Plaintiffs filed an Amended Complaint" in the state court. (ECF

2

No. 5-1 at 1.) On June 14, 2021, Plaintiffs filed a pleading in the state court titled a "Third Amended Complaint"[2] containing seven (7) claims for (1) negligence, gross negligence, and recklessness; (2) violation of the SCBORFHP; (3) violation of the Rehabilitation Act; (4) violation of the ADA; (5) violation of the IDEA; (6) § 1983 deprivation of civil rights; and (7) for Outrage/IED. (*See* ECF No. 1-1.) Defendants removed the case to this court on July 14, 2021, asserting federal subject matter jurisdiction based on the alleged violations of the Rehabilitation Act, the ADA, the IDEA, and the alleged deprivation of civil rights pursuant to § 1983. (ECF No. 1 at 2 ¶ 6–3 ¶ 9.)

On July 21, 2021, Defendants filed the pending Motion to Dismiss and Motion to Strike. (ECF No. 5.) Thereafter, the parties responded and replied to these Motions. (*See* ECF Nos. 9, 12.)

## II.     JURISDICTION

This court has jurisdiction over Plaintiffs' IDEA, Rehabilitation Act, and ADA claims via 28 U.S.C. §§ 1331 and 1343, as they arise under the laws of the United States. The court may properly hear Plaintiffs' state law claims based on supplemental jurisdiction since these claims are "so related to claims in the action within such original jurisdiction that . . . it form[s] part of the same case or controversy . . . ." 28 U.S.C. § 1367(a).

## III.     LEGAL STANDARD

A.     <u>Motion to Dismiss Pursuant to Rule 12(b)(1) for Lack of Subject Matter Jurisdiction</u>

Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of "cases" and "controversies." U.S. Const. art. III, § 2. "Federal courts are courts of limited subject matter jurisdiction, and as such there is no presumption that the court has

---

[2] Defendants observe that Plaintiffs have actually only amended the Complaint twice. (ECF No. 5-1 at 1 n.2.)

jurisdiction." *Pinkley, Inc. v. City of Fredrick, Md.*, 191 F.3d 394, 399 (4th Cir. 1999). A Rule 12(b)(1) motion for lack of subject matter jurisdiction raises the fundamental question of whether a court has jurisdiction to adjudicate the matter before it. Fed. R. Civ. P. 12(b)(1). In determining whether jurisdiction exists, the court is to "regard the pleadings' allegations as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (citation omitted). The plaintiff bears the burden of proof on questions of subject matter jurisdiction. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

B.     Motion to Dismiss Pursuant to Rule 12(b)(6) for Failure to State a Claim

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). "In considering a 12(b)(6) challenge to the sufficiency of a complaint, this Rule must be applied in conjunction with the liberal pleading standard set forth in Federal Rule of Civil Procedure 8(a)." *Jenkins v. Fed. Bureau of Prisons*, C/A No. 3:10-1968-CMC-JRM, 2011 WL 4482074, at *2 (D.S.C. Sept. 26, 2011). Rule 8(a) provides that to be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim should not be

4

granted unless it appears certain that the plaintiff can prove no set of facts that would support her claim and would entitle her to relief. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999); *Mylan Labs., Inc.*, 7 F.3d at 1134. "In so doing, a court may consider documents attached to the complaint or the motion to dismiss 'so long as they are integral to the complaint and authentic.'" *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

C.     Motion to Strike Generally

Rule 12 allows a court, acting either on its own or on a motion, to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[3] Fed. R. Civ. P. 12(f). Generally, such motions "are only granted when the challenged allegations 'have no possible relation or logical connection to the subject matter of the controversy' or 'cause some

---

[3] "'Immaterial' matter is that which has no essential or important relationship to the claim for relief, and 'impertinent' material consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues." *CTH 1 Caregiver v. Owens*, C/A No. 8:11-2215-TMC, 2012 WL 2572044, at *5 (D.S.C. July 2, 2012) (citation omitted). "'Scandalous' includes allegations that cast a cruelly derogatory light on a party to other persons." *Id.* (citation omitted). "The granting of a motion to strike scandalous matter is aimed, in part, at avoiding prejudice to a party by preventing a jury from seeing the offensive matter or giving the allegations any other unnecessary notoriety inasmuch as, once filed, pleadings generally are public documents and become generally available." *Id.* (citation omitted).

form of significant prejudice to one or more of the parties to the action.'" *Moore v. Novo Nordisk, Inc.*, C/A No. 1:10-2182-MBS-JRM, 2011 WL 1085650, at *8 (D.S.C. Feb. 10, 2011) (citations omitted). "A motion to strike is a drastic remedy which is disfavored by the courts and infrequently granted." *Clark v. Milam*, 152 F.R.D. 66, 70 (S.D. W. Va. 1993); *see also Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) ("Rule 12(f) motions are generally with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'") (quoting 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1380 (2d ed. 1990)). "[W]here there is any question of fact or any substantial question of law, the court should refrain from acting until some later time when these issues can be more appropriately dealt with." *United States v. Fairchild Indus., Inc.*, 766 F. Supp. 405, 408 (D. Md. 1991).

A Rule 12(f) motion falls within the discretion of the district court. *Palmetto Pharm. LLC v. Astrazeneca Pharm. LP*, No. 2:11-cv-00807-SB-JDA, 2012 WL 6025756, at *4 (D.S.C. Nov. 6, 2012) (citation omitted); *Xerox Corp. v. ImaTek, Inc.*, 220 F.R.D. 241, 243 (D. Md. 2003). "When reviewing a motion to strike, 'the court must view the pleading under attack in a light most favorable to the pleader.'" *Piontek v. Serv. Ctrs. Corp.*, Civil No. PJM 10-1202, 2010 WL 4449419, at *3 (D. Md. Nov. 5, 2010) (citation omitted).

### IV.     ANALYSIS

A.     <u>The Parties' Arguments</u>

  *1. Defendants*

In their Motion to Dismiss, Defendants make specified arguments as to both Plaintiff's statutory and tort claims. First, as to the statutory claims, Defendants argue that the court lacks subject matter jurisdiction over Plaintiffs' claims alleging violation of the Rehabilitation Act, the ADA, and the IDEA because they "failed to exhaust their administrative remedies." (ECF No. 5

6

at 2 (citations omitted).) Defendants argue that the court cannot grant Plaintiffs relief against Abraham based on a violation of these federal statutes and the SCBORFHP because the laws do not allow for lawsuits against individuals. (*Id.* at 3 (citations omitted).) They argue that Plaintiffs' Rehabilitation Act, and ADA claims fail against the District because they do not "identify the benefit or accommodation that was withheld resulting in alleged discrimination and fail to sufficiently allege bad faith and/or gross misjudgment pursuant to *Doe v. Berkeley Cty. Sch. Dist.*, No. 2:13-cv-3529-PMD, 2015 WL 7722425 (D.S.C. Nov. 30, 2015) and *Sellers v. Sch. Bd. of Mannassas*, 141 F.3d 524 (4th Cir. 1998). (ECF No. 5 at 3.) Defendants also argue that the court should dismiss the IDEA claim against the District "because the IDEA does not allow for a private cause of action for educational malpractice or unspecified tort-like injuries." (*Id.*) Finally, Defendants argue that the § 1983 claim fails "because Abraham cannot be sued in his official capacity; Abraham has qualified immunity, in his individual capacity; and there is no policy or custom alleged in the Second Amended Complaint." (ECF No. 5 at 4 (citing *Monell v. Dep't of Soc. Serv. of the City of N.Y.C.*, 436 U.S. 658, 690 – 91 (1978)).)

As to Plaintiffs' tort claims, Defendants contend that Plaintiffs fail to state a claim against Abraham for negligence, gross negligence, and/or recklessness because the District is the only proper party under the South Carolina Tort Claims Act ("SCTCA"), S.C. Code Ann. §§ 15-78-10 to -220 (West 2022). (ECF No. 5 at 3 (citations omitted).) Defendants further argue that the SCTCA prohibits claims for outrage/IED. (*Id.*)

In their Motion to Strike, Defendants assert that the court should strike from the "WHEREFORE" clause of the Third Amended Complaint the express reference to the punitive damages which Defendants argue is "precluded by law." (*Id.* at 4 (citation omitted).)

7

*2. Plaintiffs*

Although they effectively agree that their IDEA claim should be dismissed (*see* ECF No. 9 at 7, 12), Plaintiffs oppose the Motion to Dismiss their Rehabilitation Act and ADA claims asserting that their allegations are sufficient for the Rule 12 stage, and they did exhaust administrative remedies "by repeatedly complaining to Defendants." (*Id.* at 6, 11–12.) Plaintiffs agree that they are not asserting claims under the IDEA, the Rehabilitation Act, and the ADA against Abraham in his individual capacity and he is entitled to dismissal of those claims. (*Id.* at 9.) However, Plaintiffs do believe their claim against Abraham under the SCBORFHP is appropriate because the statute prohibits discrimination directed at handicapped persons and authorizes a private civil action for damages. (*Id.* (citing S.C. Code Ann. §§ 43-33-530, -540) (West 2022)).) Moreover, Plaintiffs assert that their § 1983 claim is viable against the District based on their allegations that:

> Defendants subjected Plaintiff K.F. to violations of her right to personal security, bodily integrity, and equal protection in at least the following particulars: a. failing to respond to reports and complaints of bullying and harassment by K.B. and other students on the basis of Plaintiff K.F. 's disability and other bases; b. failing to supervise a known dangerous situation; c. failing to protect K.F. from a student known to pose a substantial risk to her; d. failing to have adequate policies to protect K.F. from discriminatory verbal and physical harassment and bullying, or to otherwise enforce such policies; e. failing to train employees how to respond to instances of discrimination and bullying on the basis of a disability; f. failing to take prompt and appropriate steps to address the effects of bullying and harassment on K.F.; g. manifesting a deliberate indifference to the risk posed by discriminatory bullying and harassment by not adopting and following adequate policies and procedures; h. manifesting deliberate indifference to the harm being inflicted upon K.F. by her tormentors; i. manifesting differential treatment, discrimination, and/or retaliation against K.F. following the attack on her.

(ECF No. 9 at 12 (referencing ECF No. 1-1 at 11 ¶¶ 48a–48i).)

As to their state tort law claims, Plaintiffs assert that they are not pursuing common law claims against Abraham individually. (*Id.* at 7.) Instead, Plaintiffs argue that the SCTCA does not prohibit claims for negligence and outrage/intentional infliction of emotional distress "against

8

a governmental entity." (*Id.* at 7–8, 10 (citing *Bass v. S.C. Dep't of Soc. Servs.*, 780 S.E.2d 252, 261 (S.C. 2015)).) Plaintiffs further contend that because punitive damages are allowable under the SCBORFHP, the Motion to Strike should be denied. (*Id.* at 13.)

B.  The Court's Review

  *1. Plaintiffs' claim for negligence, gross negligence, and recklessness*

In their Motion to Dismiss, Defendants argue that Plaintiffs cannot maintain claims against Abraham for negligence, gross negligence, and recklessness based on the allegations of the Third Amended Complaint. (ECF No. 5-1 at 10–13.)

The SCTCA states that it is "the exclusive remedy available for any tort committed by a governmental entity, its employees, or its agents except as provided in Section 15-78-70(b)." S.C. Code Ann. § 15-78-20(a) (West 2022). The court observes that the parties do not appear to dispute that Abraham was acting within the scope of his official duty when K.F. was injured and is therefore an inappropriate party with respect to Plaintiffs' claims for negligence, gross negligence, and/or recklessness. (*See* ECF Nos. 1-1 at 4 ¶ 9, 9 at 7.) In this regard, courts have consistently interpreted the SCTCA as requiring a plaintiff "to sue the agency for which an employee works, rather than suing the employee directly" when claiming a government employee acted negligently in the official performance of his job. *Flateau v. Harrelson*, 584 S.E.2d 413, 418 (S.C. Ct. App. 2003) (citing S.C. Code Ann. § 15–78–70(c) (West 2022)). As a result of the allegations of the Third Amended Complaint, the court dismisses the negligence claims asserted against Abraham. *E.g.*, *Gallmon v. Cooper*, C/A No. 3:17-59-TLW-PJG, 2018 WL 4957406, at *7 (D.S.C. Apr. 19, 2018) ("Here, Officer Cooper was acting within the scope of his official duties when he shot Gallmon. Therefore, pursuant to § 15-78-70(a), he is not personally liable for that conduct in a negligence action.").

### 2. *Plaintiffs' claim for violation of the SCBORFHP*

Defendants seek dismissal to the extent any claim for violation of the SCBORFHP is asserted against Abraham. (ECF No. 5-1 at 14.)

The SCBORFHP prohibits discrimination "against a handicapped person with respect to public accommodation, public services, or housing without reasonable justification." S.C. Code Ann. § 43-33-530 (West 2022). The court was unable to locate any case law interpreting whether the SCBORFHP provides a private right of action against an individual. *See, e.g.*, *Smith v. Laidlaw Transit, Inc.*, C/A No. 3:02-4179-JFA, 2006 WL 6036888, at *15 (D.S.C. Jan. 6, 2006) ("There is no caselaw interpreting how this Act might apply in the context of this lawsuit."). "However, most Courts have held that, when dealing with discrimination cases, the standards through which these claims are to be considered are the same, no matter what antidiscrimination statute is at issue." *Id.* (citations omitted). "Therefore, in the absence of any guidance by way of state judicial precedent or statutory instruction as to how the claims presented in this lawsuit should be considered in the context of the cited statute, . . . Plaintiff[s'] claim should be evaluated under the same standards used for considering claims under the ADA and/or the Rehabilitation Act." *Id.*

Upon its review, the court observes that in accordance with the aforementioned interpretation of the ADA and/or the Rehabilitation Act, any claim against Abraham personally for violation of the SCBORFHP fails because these statutes do not permit suit against persons in their individual capacities. *See, e.g.*, *McNulty v. Bd. of Educ. of Calvert Cty.*, No. Civ. A. DKC 2003-2520, 2004 WL 1554401, at *6 (D. Md. July 8, 2004) ("As with Title II of the ADA, Section 504 of the Rehabilitation Act 'does not permit actions against persons in their individual capacities.'" (citation omitted)). Moreover, the court concludes that any claim asserted against Abraham in his official capacity is duplicative of those alleged against the District. *See, e.g.*, *Love-*

*Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) (finding that "[t]he district court correctly held that the § 1983 claim against Martin in his official capacity as Superintendent is essentially a claim against the Board and thus should be dismissed as duplicative."); *Estate of Valentine by & through Grate v. S.C.*, C/A No. 3:18-00895-JFA, 2019 WL 8324709, at *8 (D.S.C. Aug. 6, 2019) ("The Court agrees with Defendant Baker that the ADA and § 504 Rehabilitation Act claims are duplicative of the claims against SCDHHS. Any judgment rendered against Baker in his official capacity as director of SCDHHS would be tantamount to a judgment against SCDHHS itself. Thus, the Court dismisses the ADA and Section 504 claims against Defendant Baker in his official capacity."). Therefore, the court dismisses the claim for violation of the SCBORFHP as asserted against Abraham.

  3. *Exhaustion*

Defendants assert that the court lacks subject matter jurisdiction over Plaintiffs' claims alleging violation of the IDEA, the ADA, and the Rehabilitation Act because they failed to exhaust the IDEA's administrative remedies. (ECF No. 5-1 at 5 (quoting *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 748 (2017) ("[W]hen a plaintiff brings a claim under the ADA or Rehabilitation Act that seeks relief that is also available under the IDEA, he or she must first exhaust the IDEA's administrative remedies.")).)

In *Fry*, the seminal IDEA exhaustion case, the United States Supreme Court observed that "[t]he IDEA offers federal funds to States in exchange for a commitment: to furnish a 'free appropriate public education'—more concisely known as a FAPE—to all children with certain physical or intellectual disabilities." *Fry*, 137 S. Ct. at 748 (citing 20 U.S.C. § 1401(3)(A)(i)). "A FAPE comprises 'special education and related services'—both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that

instruction." *Id.* at 748–49. "Under the IDEA, an 'individualized education program,' called an IEP for short, serves as the 'primary vehicle' for providing each child with the promised FAPE." *Id.* at 749 (citing *Honig v. Doe*, 484 U.S. 305, 311 (1988)). "[T]he IEP spells out a personalized plan to meet all of the child's 'educational needs' . . . [and] documents the child's current 'levels of academic achievement,' specifies 'measurable annual goals' for how she can 'make progress in the general education curriculum,' and lists the 'special education and related services' to be provided so that she can 'advance appropriately toward [those] goals.'" *Id.* (citing 20 U.S.C. § 1414(d)(1)(A)(i)).

Pursuant to § 1415(l) of the IDEA, "a plaintiff bringing suit under the ADA, the Rehabilitation Act, or similar laws must in certain circumstances—that is, when 'seeking relief that is also available under' the IDEA—first exhaust the IDEA's administrative procedures." *Fry*, 137 S. Ct. at 750 (citing 20 U.S.C. § 1415(l)). "[T]o meet th[is] statutory standard, a suit must seek relief for the denial of a FAPE, because that is the only 'relief' the IDEA makes 'available.'" *Id.* at 752. "For that reason, § 1415(l )'s exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a free appropriate public education." *Fry*, 137 S. Ct. at 754. If a lawsuit charges such a denial, the plaintiff cannot escape § 1415(l ) merely by bringing her suit under a statute other than the IDEA . . . [r]ather, that plaintiff must first submit her case to an IDEA hearing officer, experienced in addressing exactly the issues she raises." *Fry*, 137 S. Ct. at 754. In other words, exhaustion of the IDEA's procedures is required "when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way." *Id.* at 755.

To guide courts in their consideration of whether the gravamen of a complaint is the denial of a FAPE, the Supreme Court provided the following test:

> One clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions. First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

*Fry*, 137 S. Ct. at 756.

After careful consideration of the foregoing in the context of the Third Amended Complaint's allegations, the court is persuaded that the gravamen of Plaintiffs' claim is about Defendant's failure to protect K.F. from harassment and bullying by another student and the negligent supervision that led to K.F.'s assault, and not about the denial of a FAPE. Because Plaintiffs do not seek relief for denial of a FAPE, the court finds that Plaintiffs did not need to exhaust the IDEA's administrative procedures before filing suit alleging violation of the ADA, the Rehabilitation Act, or the IDEA.[4]  *E.g.*, *Bowe v. Eau Clare Area Sch. Dist.*, Case No. 16-cv-746-jdp, 2017 WL 1458822, at *5 (W.D. Wis. Apr. 24, 2017) ("The peer harassment that Bowe alleges is a general-purpose barrier to all of the benefits of school, not just the custom-designed IEP that the IDEA provides. So the relief Bowe seeks is not for the denial of a FAPE, but rather the denial of a harassment-free environment to which all students and employees are entitled. The mere fact that Bowe's claims concern a school environment does not mean that he seeks relief for the denial

---

[4] The court observes that the *Fry* "clues" are not helpful in this instance because "a child would likely not be able to argue that she was negligently supervised by the theater if she were [] assaulted in a theater []; neither would an adult assaulted in a school [] be able to make a claim of negligent supervision." *Doe v. Dennis-Yarmouth Reg'l Sch. Dist.*, C/A No. No. 21-cv-10172-PBS, 2022 WL 36480, at *7 (D. Mass. Jan. 4, 2022).

13

of a FAPE.").

    *4. Plaintiffs' claim for violation of the Rehabilitation Act and the ADA*

While the parties agree that the court should dismiss Plaintiffs' Rehabilitation Act and ADA claims against Abraham individually[5] (*see, e.g.*, ECF No. 9 at 8), they continue to dispute whether Plaintiffs sufficiently allege a violation of the ADA and/or the Rehabilitation Act by the District.

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). The ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

"To the extent possible, [the United States Court of Appeals for the Fourth Circuit] construe[s] the ADA and Rehabilitation Act to impose similar requirements." *Halpern v. Wake Forest Univ. Health Sci.*, 669 F.3d 454, 461 (4th Cir. 2012) (citing *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 214 (4th Cir. 2002); *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 57 (4th Cir. 1995)). "Thus, despite the different language these statutes employ, they require a plaintiff to demonstrate the same elements to establish liability." *Id.* (citation omitted). "In the context of a student excluded from an educational program, to prove a violation of either Act, the plaintiff must establish that (1) he has a disability, (2) he is otherwise qualified to participate in the defendant's program, and (3) he was excluded from the program on the basis of

---

[5] The court further observes that as with other claims addressed in this Order, claims against Abraham in his official capacity would be duplicative of those alleged against the District.

14

his disability." *Id.* (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005)). "The two statutes differ only with respect to the third element, causation." *Id.* "To succeed on a claim under the Rehabilitation Act, the plaintiff must establish he was excluded 'solely by reason of' his disability; the ADA requires only that the disability was 'a motivating cause' of the exclusion." *Id.* at 461–62 (citing *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468–69 (4th Cir. 1999)). Where a plaintiff asserts denial of a FAPE to a child with a disability, a plaintiff must demonstrate bad faith or gross misjudgment by the school system and "allegations of negligence, standing alone, are insufficient." *S.S. v. Bd. of Educ. of Harford Cty.*, 498 F. Supp. 3d 761, 789 (D. Md. 2020) (citations omitted).

In light of its prior determination that this action is not the result of the denial of a FAPE, the court agrees with Defendants that the Third Amended Complaint fails to identify a federal benefit/program that was denied to K.F. because of her disability. Under these circumstances, the court is required to find that the allegations in the Third Amended Complaint are insufficient to state a claim for violation of either the Rehabilitation Act or the ADA and the court must dismiss these claims.

   5. *Plaintiffs' claim for violation of the IDEA*

The court observes that the parties agree that Defendants are entitled to dismissal of Plaintiffs' claim alleging violation of the IDEA. (*See* ECF No. 9 at 12.)

   6. *Plaintiffs' claim for section 1983 deprivation of civil rights*

Defendants assert they are entitled to dismissal of Plaintiffs' § 1983 claims. (ECF No. 5-1 at 21–27.)

"Title 42 U.S.C. § 1983 is a federal statutory remedy available to those deprived of rights secured to them by the Constitution and, in a more sharply limited way, the statutory laws of the

15

United States." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). "One alleging a violation of section 1983 must prove that the charged state actor (1) deprived plaintiff of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was performed under color of the referenced sources of state law found in the statute."[6] *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970); *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001)).

Upon consideration of the Third Amended Complaint's allegations, the court is unable to conclude that Plaintiffs have stated a § 1983 claim against Abraham in an individual capacity. (*Cf.* ECF No. 1-1 at 4 ¶ 9 ("That employees of York County School District were acting within the course and scope of their employment when they committed tortious acts that were the direct and proximate cause of the Plaintiffs injuries.").) *See also Miller v. Union Cty. Pub. Schs.*, DOCKET NO. 3:16-cv-00666-FDW-DCK, 2017 WL 3923977, at *7 (W.D.N.C. Sept. 7, 2017) ("In order to sufficiently allege personal liability under § 1983, a plaintiff must assert a defendant acted directly in violating the plaintiff's constitutional rights." (citing *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977))). The court further observes that if Plaintiffs seek to hold Abraham liable in his official capacity, such claim fails as both duplicative and because he is not a "person" amenable to suit as a matter of law. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("Neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Love-Lane*, 355 F.3d at 783 (finding an official capacity claim against a school administrator was essentially a

---

[6] "To establish municipal liability under section 1983, a plaintiff must demonstrate more than respondeat superior liability." *Cherry*, 2013 WL 422857, at *6 (citing *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 693 n.7 (1978)). "A plaintiff must show (1) an official policy or custom (2) that is fairly attributable to the municipality (3) that proximately caused the deprivation of a constitutional right." *Id.* (citing *Pettiford v. City of Greensboro*, 556 F. Supp. 2d 512, 530 (M.D.N.C. 2008)). "Additionally, the plaintiff must show that the officials or employees at issue had policymaking authority such that their acts constitute municipal policy." *Id.* (citing *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)).

claim against defendant school board and therefore duplicative).

As for maintaining a § 1983 claim against the District, this court has previously observed that "it is well-established that a plaintiff is required to allege that the District's policy or customs deprived the plaintiff of her rights." *Mosely-Jenkins v. Orangeburg Cty. Consol. Sch. Dist. 4*, C/A No.: 5:19-cv-00701-JMC, 2020 WL 1443262, at *3 (D.S.C. Mar. 25, 2020). More specifically, "[t]o state such a claim, [Plaintiffs] must identify the specific policy or custom in the Complaint." *Id.* at *4 (citing *Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987)). Upon review of the Third Amended Complaint, Plaintiffs fail to allege the requisite specific policy or custom that caused a constitutional deprivation. Consequently, the District is entitled to dismissal of the § 1983 claim.

7. *Outrage/IED*

The parties dispute whether the SCTCA bars recovery for Plaintiffs' claim of outrage/IED.[7] At the outset, the court observes that in the Third Amended Complaint, Plaintiffs plead that Defendants acted with recklessness and engaged in conduct "so extreme and outrageous so as to exceed all possible bounds of decency." (ECF No. 1-1 at 12 ¶¶ 51, 52.) Based on the express language of Plaintiffs' allegations, the court agrees with Defendants that Plaintiffs' claim of outrage/IED is barred by the SCTCA and cites to the following reasoning laid out by this court in the matter of *Anderson v. Dorchester County*:

---

[7] "To recover for outrage—otherwise known as intentional infliction of emotional distress—a plaintiff must establish the following: (1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from his conduct; (2) the conduct was so 'extreme and outrageous' so as to exceed 'all possible bounds of decency' and must be regarded as 'atrocious, and utterly intolerable in a civilized community;' (3) the actions of the defendant caused plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was 'severe' such that 'no reasonable man could be expected to endure it.'" *Bass*, 780 S.E.2d at 260–61 (citing *Argoe v. Three Rivers Behavioral Health, L.L.C.*, 710 S.E.2d 67, 74 (S.C. 2011)).

17

> The SCTCA explicitly defines a recoverable loss under the statute as any loss "recoverable in actions for negligence," and explicitly excludes losses from "the intentional infliction of emotional harm." S.C. Code Ann § 15-78-30(f). Under plaintiffs' theory, their alleged injury from defendants' infliction of emotional harm should fall under the former category, and not the latter, because it can be proven by showing that the defendants acted recklessly, not intentionally. It is clear to the court that plaintiffs' alleged injury still falls within the SCTCA's bar to recovery for losses from "the intentional infliction of emotional harm," even though plaintiffs think their claim can be proven through recklessness. For one, South Carolina courts have long treated recklessness conduct as possessing an element of willfulness. *See, e.g.*, *Berberick v. Jack*, 709 S.E.2d 607, 612 (S.C. 2011) ("Recklessness implies the doing of a negligent act knowingly; it is the conscious failure to exercise due care."); *Boyd v. Blue Ridge R. Co.*, 43 S.E.2d 817, 818 (S.C. 1903) ("If a person of ordinary reason and prudence would have been conscious of the probability of resulting injury, the law says the person is reckless or willful and wanton, all of which have the same meaning – the conscious failure to exercise due care."). In other words, "reckless" in South Carolina is far closer to "intentional" than "negligent."
>
> More fundamentally, the court finds it hard to believe that the South Carolina legislature would explicitly exclude from recovery any loss caused by "the intentional infliction of emotional harm," but not exclude from recovery the very same harm when the emotional distress was inflicted recklessly. S.C. Code Ann § 15-78-30(f). A much more rational reading of the statute is that the South Carolina legislature intended to exclude losses resulting from the tort of intentional infliction of emotional distress, whether the harm is proven through the defendant's intentional acts or his recklessness. This court has previously concluded the same. *Smith v. City of Charleston*, 2007 WL 9735801, at *5 (D.S.C. July 24, 2007) ("Recovery from governmental entities for intentional torts and intentional infliction of emotional distress is specifically barred by the Tort Claims Act."). As such, the court overrules plaintiffs' objection and dismisses plaintiffs' claim for grossly negligent and intentional infliction of emotional distress/outrage.

No. 2:20-cv-2084-DCN-MGB, 2021 WL 1186637, at * (D.S.C. Mar. 30, 2021).

   *8. Punitive Damages*

In response to Defendants' request that the court strike punitive damages from the "WHEREFORE" provision of the Third Amended Complaint, Plaintiffs agree "that punitive damages are not available against Defendants under the [SC]TCA, ADA, Rehabilitation Act, and § 1983, but assert that punitive damages are available under the SCBORFHP. (ECF No. 9 at 13 (referencing S.C. Code Ann. § 43-33-540).) However, the court observes that § 43-33-540

18

expressly limits recovery for violation of the SCBORFHP to a maximum of $5000.00 actual damages, plus attorney's fees and costs. Accordingly, the court finds that Defendants are entitled to strike the reference to punitive damages from the Third Amended Complaint.

## V.    CONCLUSION

For the reasons set forth above, the court hereby **GRANTS** Defendants York School District 1 and Michael Abraham's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 5) and **DISMISSES** from the Complaint the following causes of action: 1) negligence, gross negligence, and recklessness against Abraham; (2) violation of the SCBORFHP against Abraham; (3) violation of the Rehabilitation Act, the ADA, and the IDEA against both Defendants; (6) § 1983 deprivation of civil rights against both Defendants; and (7) for Outrage/IED against both Defendants. The court next **DENIES** Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (ECF No. 5). Finally, the court **GRANTS** Defendants' Motion to Strike (ECF No. 5) and strikes Plaintiffs' request for punitive damages from the Third Amended Complaint.

As a result of the court's decision, the claims remaining in this case are against the District for negligence, gross negligence, and recklessness and for violation of the South Carolina Bill of Rights for Handicapped Persons. Because the remaining claims in the case are premised upon state law, the court observes that it has discretion to decline to continue exercising supplemental jurisdiction and remand this matter to state court. *See* 28 U.S.C. § 1367(c). However, the court is also cognizant that Plaintiffs have requested leave to amend their Third Amended Complaint "if the [c]ourt finds the allegations wanting." (*E.g.*, ECF No. 9 at 12.) In light of Plaintiffs' request, the court will allow Plaintiffs the opportunity to amend within the parameters of a scheduling order, which the Clerk of Court is instructed to enter upon the filing of this Order. *See Ostrzenski*

*v. Seigel*, 177 F.3d 245, 252–53 (4th Cir. 1999) ("A dismissal under Rule 12(b)(6) generally is not final or on the merits and the court normally will give plaintiff leave to file an amended complaint. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that [the] plaintiff be given every opportunity to cure a formal defect in his pleading." (quoting 5A Charles Allen Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (2d ed. 1990))).

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

March 7, 2022
Columbia, South Carolina